IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ORAL F SEKENDUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GLENN A MCCANDLISS; MORGAN STANLEY SMITH BARNEY; | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) No. 11 C 8981 |
| GLENN A MCCANDLISS, | ) |
| | ) |
| Counter-Claimant, Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NAFIZ SEKENDUR; MESRURE SEKENDUR; BATUR SEKENDUR, | ) |
| | ) |
| Third-Party Defendants, | ) |
| | ) |
| ORAL F SEKENDUR, | ) |
| | ) |
| Counter-Defendant. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On December 7, 2011, plaintiff Oral Sekendur ("Oral") filed a complaint in the Circuit Court of Cook County alleging that defendant Glenn McCandliss is liable for civil conspiracy, harassment, defamation, and intentional infliction of emotional distress. (Dkt. No. 1, Ex. A.)[1]

---

[1] Oral also alleged that defendant Morgan Stanley Smith Barney LLC ("MSSB") is liable to him on a variety of counts. (Dkt. No. 1, Ex. A.) All of Oral's claims against MSSB have been stayed and are not relevant to the motions pending before the court at this time. (Dkt. No. 25.)

McCandliss removed the action to this court (Dkt. No. 1), and on January 2, 2012, filed counterclaims against Oral for civil conspiracy, fraudulent conveyances, and violation of the Uniform Fraudulent Transfer Act ("UFTA"). (Dkt. No. 6.) In addition, McCandliss filed third-party claims against Oral's brother, Batur Sekendur, and his parents, Nafiz and Mesrure Sekendur.[2] McCandliss alleges that Nafiz, Mesrure, and Batur are liable for civil conspiracy, fraudulent conveyances, and violation of the UFTA. (Dkt. No. 7.)

There are three summary judgment motions pending before the court. First, McCandliss has moved for summary judgment on all of Oral's claims against McCandliss. McCandliss in his motion also seeks summary judgment on his three claims against Oral, Batur, Nafiz, and Mesrure. (Dkt. No. 139.) In addition, Batur, Nafiz, and Merure have filed a cross-motion for summary judgment on McCandliss's claims against them. (Dkt. No. 158.) Separately, Oral has filed a cross-motion for summary judgment on McCandliss's claims against Oral, and also on Oral's claims against McCandliss.

For the reasons stated below, McCandliss's motion for summary judgment on all claims (Dkt. No. 139) is granted with respect to Oral's claims against him, and denied with respect to his claims against the Sekendurs. The summary judgment motion of Batur, Nafiz and Mesrure (Dkt. No. 158) is granted, and the summary judgment motion of Oral (Dkt. No. 184) is granted with respect to McCandliss's claims against Oral, and denied with respect to Oral's claims against McCandliss.

---

[2] McCandliss's pleading misspelled Mesrure's name as "Mensure." The court has corrected the spelling in the caption of this order and uses the correct spelling throughout this opinion.

BACKGROUND

The following facts are taken from McCandliss's Rule 56.1 statement of material facts accompanying his motion for summary judgment (Dkt. No. 140 ("Def.'s SMF")), and for purposes of resolving these motions are undisputed.[3]

The claims at issue here stem from a 2003 qui tam action filed by McCandliss court captioned *U.S. ex rel. Glenn McCandliss v. Batur and Oral Sekendur*, No. 03 C 807 (N.D. Ill.) (the "2003 Action"), in which McCandliss as relator on behalf of the United States alleged that Batur and Oral Sekendur violated the False Claims Act and defrauded the U.S. Social Security Administration. (*See* Def.'s SMF, Ex. 2.) Following a bench trial, this court on February 20, 2007, found that Batur and Oral were both liable under the False Claims Act. (*Id.*) The court subsequently entered a judgment "in favor of the United States and Relator Glenn McCandliss and against Batur and Oral Sekendur, jointly and severally, in the amount of $1,524,264.50." Dkt. No. 241, *U.S. ex rel. McCandliss*, No. 03 C 807 (N.D. Ill. Aug. 23, 2007).

A few weeks after the February 2007 bench trial, Batur transferred the title of his powerboat the "Whitecap" to his mother Mesrure for no consideration. (Def.'s SMF ¶ 16 & Ex. 13.) This court ruled that the transfer was fraudulent under the UTFA and that the boat was thus

---

[3] Batur, Nafiz, and Mesrure filed a Rule 56.1 statement in response to McCandliss's Rule 56.1 statement, in which they admit that there is no dispute as to many of McCandliss's facts. (Dkt. No. 151.) With respect to the statements they contest, Batur, Nafiz, and Mesrure fail to cite to record evidence to support their position. (*Id.*) Accordingly, the contested statements are deemed admitted as well. *See* L.R. 56.1(b)(3)(B); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial."). For his part, Oral failed to file any response to McCandliss's Rule 56.1 statement of facts, so Oral has also admitted all of those facts. *See Malec*, 191 F.R.D. at 584. Oral did file a statement of facts to support his motion for summary judgment (Dkt. No. 191), but many of his facts fail to include citations to the record and in any case do not materially differ from McCandliss's statement of facts.

available to be attached by McCandliss in his attempts to collect on the judgment in the 2003 Action. (Def.'s SMF ¶ 17, Ex. 14.)

In November of 2009, Mesrure purchased a home in Seattle, Washington, with an address of "12010 Daniel Place" for $350,000. (Def.'s SMF ¶¶ 21-16, Exs. 19-24.) Batur assisted Mesrure with the purchase by filling out some of the necessary documents. (Def.'s SMF ¶¶ 21-23.) On October 17, 2011, Batur stated that he had lived at 12010 Daniel Place for the previous two years. (*Id.* ¶ 33.) Batur's parents both lived in Palm Coast, Florida, during that time period. (*Id.* ¶ 34.)

On November 9, 2007, the United States issued a citation to discover assets to MSSB in an attempt to collect the judgment against Oral, leading MSSB to freeze Oral's access to his MSSB accounts. (Def.'s SMF, Ex. 4.) The citation subsequently expired, however, and Oral withdrew $48,848.96 and $88,235.15 from two of his MSSB accounts on August 14, 2008. (Def.'s SMF ¶ 18.)

McCandliss's statement of material facts also includes information about several accounts held in Batur's name. On June 12, 2009, Batur owned an AXA Equitable 300 Series Account with a balance of $199,381.11. (Def.'s SMF ¶ 29.) On December 31, 2010, Batur had a Bank of America "retirement portfolio account" with a balance of $198,432.64. (*Id.* ¶ 30.) Batur withdrew $199,432.62 from the Bank of America Account on August 8, 2011, and on October 17, 2011, Batur held a Viking Bank IRA account with a balance of $189,050.00. (*Id.* ¶¶ 31-32.)

LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for

its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). The court does not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## ANALYSIS

I.      Oral's claims against McCandliss

All of Oral Sekendur's claims against McCandliss are premised on the allegation that McCandliss "illegally seized" Oral's accounts with MSSB in an improper attempt to collect on the judgment in the 2003 Action. (Dkt. No. 1, Ex. 1 ¶ 1.) Oral contends those accounts are exempt from seizure under 735 ILCS 5/12-1001 and 735 ILCS 5/12-1006. Oral's complaint provides no additional detail, but his response to McCandliss's summary judgment motion indicates that the allegedly illegal seizure occurred when the United States issued the citation to discover assets to MSSB on November 9, 2007. (Dkt. No. 152, at 1-2; *see also* Dkt. No. 140, Ex. 4.)

There are two deficiencies in Oral's allegations. First, the United States, not McCandliss, is responsible for the seizure of Oral's accounts, and Oral provides no valid theory for why McCandliss should be responsible for the United States's actions. Oral does contend that as the relator in the qui tam action, McCandliss is the agent of the United States and therefore

5

responsible for its action. Oral cites no law to support the proposition that an agent is generally responsible for the actions of its principal, and the court is aware of none. To the contrary, with respect to torts, "[a]n agent's liability is based on the agent's conduct; the agent's status is, separately, a basis for imposing liability only when a statute, regulation, or ordinance so provides." *Restatement (Third) of Agency* § 7.01 cmt.b (2006). Because Oral has not cited any statute or other law that would make McCandliss liable for the actions of the United States, Oral's argument fails on this point.

Separately, Oral's claims are all also barred by the Citizen Participation Act, Illinois's anti-SLAPP statute,[4] which was enacted to prohibit precisely the type of lawsuit filed by Oral in this case. A SLAPP suit is one which "chills and diminishes citizen participation in government, voluntary public service, and the exercise of the[] important constitutional rights [of petition, speech, association, and government participation]." 735 ILCS 100/5. Litigants who bring such suits use them "as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs." *Id.* To combat that problem, under the Citizen Participation Act, "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15. SLAPP suits brought in response to actions taken in furtherance of the constitutional right to petition the government are to be dismissed under the statute, "unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from, or not in furtherance of acts immunized from,

---

[4] "SLAPP" lawsuits, or "Strategic Lawsuits Against Public Participation," are recognized and legislated against in more than 20 states. Illinois enacted its Citizen Participation Act in 2007. *See generally Sandholm v. Kuecker*, 962 N.E.2d 418, 427 (Ill. 2012).

liability by this Act." 735 ILCS 110/20. Among the acts furthering the constitutional right to petition the government that Illinois's anti-SLAPP statute protects is the filing and prosecution of a lawsuit. *See Shoreline Towers Condo. Ass'n v. Gassman*, 936 N.E.2d 1198, 1207 (Ill. App. Ct. 2010) (holding that a lawsuit targeting resident's complaints of religious discrimination, one of which was filed in the U.S. District Court for the Northern District of Illinois, is barred by the anti-SLAPP statute).

Based on the evidence that McCandliss has produced, the court concludes that Oral's claims are barred by the anti-SLAPP statute. Oral's suit targets McCandliss's behavior in pursuing the qui tam action against Oral and Batur in federal court, and McCandliss's supposed attempts to collect on the resulting judgment. McCandliss's exercise of his constitutional right to petition the government by bringing and pursuing the qui tam action against Oral under the False Claims Act is protected activity under the anti-SLAPP statute.

In response, Oral has failed to produce any evidence showing that McCandliss's acts in filing the lawsuit and pursuing the judgment are not immune from liability under the Citizen Participation Act. *See* 735 ILCS 110/20. Indeed, Oral's response to the motion for summary judgment (Dkt. No. 152) does not respond to McCandliss's argument under the SLAPP statute at all. Oral's claims against McCandliss require no further discussion and are all dismissed.

II.     McCandliss's claims against Oral, Batur, Nafiz, and Mesrure

McCandliss has also filed counterclaims and third-party claims against Oral, his brother Batur, and their parents Nafiz and Mesrure for civil conspiracy, fraudulent conveyances, and violation of the Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160. (Dkt. No. 140, Ex. 3.) McCandliss's motion seeks summary judgment on these claims as well. In addition, Batur, Nafiz, and Mesrure have filed a cross motion for summary judgment on McCandliss's claims

against them. Separately, Oral has filed a cross motion for summary judgment on McCandliss's claims against him.

The theory underlying all three of McCandliss's claims against the Sekunders is that Oral and Batur fraudulently transferred assets to their parents to avoid paying the judgment in the 2003 case. McCandliss's claim for civil conspiracy, for example, depends on showing "a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate*, *Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) (citing *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 329 (Ill. 1990)). The "unlawful" action that McCandliss alleges as the basis of this claim is a fraudulent conveyance from Oral and Batur to their parents, so McCandliss's civil conspiracy claim depends on the success of his claims for fraudulent conveyances.

McCandliss's second claim alleges fraudulent conveyances, and his third claim alleges violation of the UFTA. It is unclear to the court whether McCandliss bases his second claim on Illinois common law or on the Illinois Fraudulent Conveyance Act. The complaint appears to allege a common law cause of action (*see* Dkt. Nos. 6, 7), but McCandliss's motion for summary judgment cites case law discussing the Illinois Fraudulent Conveyance Act, which was repealed and replaced in 1990 with the UFTA. *Gendron v. Chi. & N. W. Transp. Co.*, 564 N.E.2d 1207, 1214 (Ill. 1990)*; see also In re Canopy Financial, Inc.*, 477 B.R. 696, 707 (N.D. Ill. 2012) (Kennelly, J.). Regardless of McCandliss's intent, under Illinois law, "a fraudulent conveyance claim is governed by the Uniform Fraudulent Transfer Act." *RBS Citizens, N.A. v. Sanyou Import, Inc.*, No. 11 C 1820, 2011 WL 2712744, at *2 (N.D. Ill. July 13, 2011) (Kocoras, J.). The court will therefore evaluate both McCandliss's UFTA and his "fraudulent conveyances" claim under the UFTA.

The UFTA provides that:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
2) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:

   (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
   (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a). As that provision makes clear, a necessary prerequisite of every UFTA claim is that there is a transfer from the debtor to a third party with the purpose of avoiding the debtor's obligation to a creditor. In addition, "a plaintiff must demonstrate that the transferor made the transfer with a specific intent to defraud creditors." *In re Commercial Loan Corp.*, 396 B.R. 730, 746 (Bankr. N.D. Ill. 2008).

The problem with McCandliss's claims is that he has not presented any evidence of such a transfer from the debtors Oral and Batur to Nafiz and Mesrure. Batur's transfer of his boat to his mother for no consideration could fall into this category, but the court has already ruled that transfer fraudulent in the 2003 action and allowed McCandliss to attach the boat to collect his judgment. (*See* Def.'s SMF ¶ 17, Ex. 14.) Any relief that McCandliss requests with respect to the boat is therefore moot, and any additional claim with respect to the boat is barred by res judicata principles as well.

McCandliss also points to the purchase of 12010 Daniel Place as evidence of a fraudulent transaction. McCandliss has only presented evidence that Batur assisted his mother with

purchasing the home in her name and with funds from a bank account in her name, and that Batur has lived in the home after the purchase. Missing from McCandliss's submissions is any evidence that the debtor Batur (or Oral, for that matter) transferred any funds to Mesrure to allow Mesrure to make the purchase. There is thus no transfer from the debtor to a third party that could be the basis of a UFTA claim. Transfers from a third party to a debtor, such as Mesrure allowing Batur to live in a home she purchased with her own funds, do not qualify. Indeed, a third party may make any transfers or gifts to a debtor that she desires.[5]

McCandliss argues that Mesrure was simply a "strawman" for the purchase and that "[c]learly here the sons are hiding money in the parents' bank accounts and the parents are acting like they are doing nothing wrong or they know nothing." (Dkt. No. 175, at 7.) The only evidence that McCandliss presents in support of that theory, however, is that Mesrure opened the accounts containing the funds she used to pay for the house shortly after the judgment against Batur and Oral was entered in the 2003 Action, and as the court was determining the appropriate amount of damages against them. (Dkt. No. 174, Ex. 7.) That evidence is merely circumstantial, and is insufficient to allow a reasonable jury to find that Batur or Oral made a transfer to their parents to avoid paying the judgment against them. McCandliss is correct that under the UFTA, "[b]ecause direct evidence of fraudulent intent is rarely available, *intent* can be inferred from the circumstantial presence of certain factors, or 'badges of fraud.'" *Commercial Loan Corp.*, 396 B.R. at 746 (emphasis added). The sufficiency of circumstantial evidence to show fraudulent intent, however, does not justify the use of circumstantial evidence alone to prove that a transfer from the debtor to a third party occurred in the first place. In the absence of any evidence that

---

[5] Any assets transferred from a third party to a debtor are of course then assets of the debtor available to the debtor's creditors. That fact makes McCandliss's objections to transfers from Mesrure and Nafiz to Oral and Batur somewhat strange, insofar as those transfers should leave McCandliss in a better position, with more assets from which to collect his judgment.

Batur or Oral transferred any money to their parents, McCandliss's claims fail to survive summary judgment.

McCandliss also contends that Oral and Batur's withdrawals from their various investment accounts constitute fraudulent transfers under the UFTA. McCandliss has presented no evidence that Oral or Batur transferred those funds to a third party, however. To the contrary, McCandliss admits that Batur's withdrawals merely indicate that he has transferred his funds from one account to another several times. (Dkt. No. 175, at 8-9.) Similarly, McCandliss's allegation that Batur and Oral have received loans from their parents provides no evidence of a transfer from Oral or Batur to avoid their debts. In the absence of any evidence of a transfer from Oral or Batur to their parents to avoid the judgment against them, McCandliss's claims are subject to summary judgment against him. Accordingly, McCandliss has also failed to present sufficient evidence of his civil conspiracy claim to survive summary judgment.

## CONCLUSION

For the reasons stated above, McCandliss's motion for summary judgment (Dkt. No. 139) is granted as to each of the eight counts alleged in Oral's complaint against McCandliss, and denied with respect to McCandliss's claims against the Sekendurs. Oral's complaint against McCandliss is entirely dismissed with prejudice. The summary judgment motion of Batur, Nafiz, and Mesrure (Dkt. No. 158) is granted. McCandliss's claims against Batur, Nafiz, and Mesrure are dismissed with prejudice. Oral's motion for summary judgment against McCandliss (Dkt. No. 184) is granted with respect to McCandliss's claims against Oral, and denied with respect to Oral's claims against McCandliss. McCandliss's claims against Oral are dismissed with prejudice. The only claims remaining in this case are Oral's claims against MSSB, which have been stayed pending arbitration. (Dkt. No. 25.) A status hearing is set for 10/10/13 at 9:00 am for

a report on the status of the pending arbitration and to determine if this civil case can be terminated. Counsel for Morgan Stanley Smith Barney LLC is requested to be present at the status hearing on 10/10/13.

ENTER:

_____
JAMES F. HOLDERMAN
District Judge, United States District Court

Date:   September 23, 2013